**UNITED STATES of America**

v.

**Cornelius GARNER, Appellant.**

**No. 73-1177.**

United States Court of Appeals, District of Columbia Circuit.

June 14, 1974.

Dennis I. Meyer, Washington, D. C. (appointed by this court), was on the brief, for appellant.

Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, John T. Kotelly, and Joel DuBoff, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

The appellant was tried on an indictment in three counts alleging that he unlawfully distributed heroin and other substances in violation of 21 U.S.C. § 841(a). The first count alleged the distribution of 8079 milligrams of heroin and other substances on October 28, 1971, the second count alleged the distribution of 8080 milligrams on October 30, and the third count, 9282 milligrams on November 5. After deliberating for an hour and twenty minutes the jury reported through its foreman that they found the

defendant guilty on all three counts, (Tr. 77, Sept. 14) and when asked by the clerk "that is your verdict say you each and all?" they chorused "Yes". (Tr. 78, Sept. 14.) When they were polled at the request of the defendant, however, the sixth juror to be interrogated responded "I find him guilty on one of the counts." (Tr. 79, Sept. 14.) The court then sent the jury back to the jury room to arrive at a unanimous verdict, (Tr. 79, Sept. 14) and thereafter they reported through their foreman that they found the defendant guilty on the first count and not guilty on the second and third counts. (Tr. 81, Sept. 14.)

On this appeal the appellant's only point is "The failure of the trial court to properly instruct the jury on the issue of identification is prejudicial error where identification of the defendant is one of the major issues in the case." The court's charge on the issue of identification was as follows:

Also, Ladies and Gentlemen of the Jury, you are instructed that the identity of the Defendant as the person who committed the crime or crimes is an essential element of every criminal offense. Therefore, the burden is on the Government to prove beyond a reasonable doubt not only the alleged crime was committed but also the Defendant was the person who committed the offense. You must be satisfied beyond a reasonable doubt of the identity, the identification of the Defendant as the person who committed the crime.

You are further instructed that it is not necessary for the Defendant to prove that another person may have committed the particular crime in question; nor is the burden upon the Defendant to prove himself innocent. The facts and circumstances have been introduced in evidence which raise a reasonable doubt as to whether the Defendant was the person who committed the offense in question. [sic] Then you should find the Defendant not guilty of the offense.

On the contrary, Ladies and Gentlemen of the Jury, should you find that the identification of the Defendant has been proven to you beyond a reasonable doubt, then you will find the Defendant guilty as charged. You may not find the Defendant guilty of the offense charged if the identification unless you find that the Government has proved beyond a reasonable doubt that the Defendant is the person who committed the offense. [sic] If the evidence in the case pertaining to identification has raised a reasonable doubt in your mind, then you must find the Defendant not guilty. On the contrary, if you find all of the testimony in the case proves to you beyond a reasonable doubt that the Defendant was the person who committed the offense in question, then you may find the Defendant guilty as charged. (Tr. 70–71, Sept. 14.)

At the conclusion of the court's charge counsel to the defendant stated "I am satisfied with the instructions." (Tr. 76, Sept. 14.) The appellant now contends however that the court should have gone further and given the instruction suggested in United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552 (1972).

The proof for the government was that on October 28, October 30 and November 5, 1971, as alleged in the indictment, Garner sold heroin to a police officer, Kenneth Johnson, who was working under cover. Johnson testified that several weeks before October 28 another police officer showed him a picture of the appellant who was identified as Moochie. He said that on October 21 he had a conversation with Garner concerning narcotics. (Tr. 57, 59, Sept. 13.) He had seen Garner before then but had not had any conversation with him. (Tr. 57, 5, Sept. 13.) These meetings took place in the 4300 block of Eighth Street. (Tr. 5, Sept. 13.)

At about 9:00 o'clock on the evening of October 28 Johnson met Garner in the middle of the 4300 block of Eighth Street and asked if it was possible to make a

purchase of heroin. Garner asked how much he wanted. Johnson said he wanted a quarter of a piece, meaning a quarter of an ounce. Garner said it would take a couple minutes and he then went into 4321-Eighth Street and came out with a tin-foil packet containing the narcotics, for which Johnson paid him $275. (Tr. 6, 7, Sept. 13.)

On October 30 at about 1:00 P.M. Johnson again saw Garner in the 4300 block of Eighth Street and asked him about getting another quarter of an ounce of heroin. Garner told Johnson to return at 5:00 o'clock, when he could make the transaction. (Tr. 11, 11A, 62, Sept. 13.) At 5:00 o'clock Johnson returned, "asked him if he had the stuff, and he said yes. He went into his house and came out with a tin-foil containing white powder." (Tr. 11A, Sept. 13.) Johnson paid Garner $250.00 and told Garner that "the next time I come around I would be interested in a larger piece" meaning "a half ounce to an ounce". (Tr. 12, Sept. 13.)

On November 5 Johnson arrived in the 4300 block of Eighth Street between 6:00 and 6:30 P.M., saw Garner, and asked if it would be possible to make a purchase of narcotics. Garner said it would, but Johnson had to come back. Johnson returned between 9:00 and 10:00 o'clock and Garner sold him another quarter of an ounce for $225.00. (Tr. 65, 14, Sept. 13.) On this occasion, as on the two previous ones, Garner went into 4321-Eighth Street to get the narcotics.

Analysis of the three packets of narcotics purchased by Johnson revealed that they contained, respectively, 16%, 10% and 12% pure heroin. (Tr. 26, 30, 39, Sept. 13.) The usual heroin content of specimens taken in the District of Columbia in October 1971 was between 1% and 4%. (Tr. 32, Sept. 13.) It thus appeared that Garner's operation was a high-level enterprise carried on at curbside.

Garner's defense was that he was at home with his wife on the nights when the sales to Johnson were alleged to have been made. He testified he had not seen Johnson before February 1972. His wife corroborated his alibi.

We think the issue here was one of veracity between Johnson and Garner. Johnson saw and dealt with Garner on six occasions between October 21 and November 5, so that Garner was well known to him. The instruction suggested in the *Telfaire* case does not focus on identifications of this sort, although it may be appropriate when a witness to a robbery or homicide has identified some stranger to him as the perpetrator of the crime. We think the instruction given by the court was entirely adequate, and that the *Telfaire* charge might well have confused the issue.

The judgment is affirmed.